# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

ALBERTO VERGARA-MANZO, FELIPE BALLEZA,

    *Defendants.*

Case No. 13-10179-EFM

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Felipe Balleza's Motion to Suppress (Doc. 17) and Defendant Alberto Vergara-Manzo's Motion to Suppress (Doc. 24). Both Defendants contend that the approximate 4.9 pounds of methamphetamine found during a vehicle search in Colby, Kansas, should be suppressed because it was found during an illegal search and seizure. The Court held a hearing on February 18, 2014. For the reasons stated in more detail below, the Court denies Defendants' motions.

### I.     Factual and Procedural Background

On October 28, 2013, Kansas Highway Patrol Trooper Brattin observed a 2005 Dodge Ram pickup traveling eastbound on Interstate 70 at approximately eighty miles per hour. Trooper Brattin followed the vehicle and saw that it had a broken left taillight. Trooper Brattin

ran the registration with dispatch, and dispatch advised him that the truck had an expired vehicle registration. The trooper then stopped the vehicle.

Defendant Felipe Balleza was the driver of the truck. Balleza is from Mexico and speaks little English. Defendant Alberto Vergara-Manzo was a passenger and seated in the right front seat. Trooper Brattin approached the vehicle on the passenger side. Balleza started to look for his driver's license and insurance. Upon questioning, Vergara-Manzo stated that they were traveling from California to Olathe because Vergara-Manzo was tired of living in California. Vergara-Manzo also stated that Balleza was going to help him find work in Olathe.

After receiving both Defendants' identification and the car insurance, the trooper began to walk to his car and observed a 2014 registration sticker on the plate although dispatch had advised him that the tag was expired. Trooper Brattin returned to the truck and asked for registration information. Defendants told the trooper that Balleza had just bought the car off the street in California and gave him the title and sales contract. The sales contract showed that Balleza bought the vehicle on October 24, 2013, for $2000.00. The tag information identified an address in California, but there was not an individual name listed in the record.

Upon running Defendants' information, Trooper Brattin learned that Vergara-Manzo had a warrant out of California, but there was no extradition requested. Trooper Brattin wrote Balleza a warning and told him that he needed to get the taillight and registration fixed, and he returned all documents. After walking a few steps away from the truck, Trooper Brattin returned to the passenger side of the vehicle and asked if he could ask them a few questions. They both agreed.

Vergara-Manzo stated that they were going to Kansas City to find work, and that he knew Balleza through his dad. Balleza stated that he had lived in Kansas City for approximately three

months but that he was originally from Dallas. He stated that he was in California to purchase the truck. Trooper Brattin observed that Balleza was quiet and that Vergara-Manzo was talkative. Trooper Brattin also observed that there was only one small bag in the pickup and many empty coffee containers and fast food trash. The trooper explained that there were a lot of people who transport drugs, money, and weapons and asked if he could search the truck. Both individuals said yes.

Trooper Brattin spoke to both Defendants in English, and both appeared to understand and respond appropriately in English. Trooper Brattin conducted a pat-down of both Defendants and asked them to stand approximately twenty to thirty feet in front of the vehicle during the search. Another officer, Trooper Medicott, arrived and assisted in the search. Upon the search, the officers observed that the underside of the truck may be different than the top, and the driver's side door was approximately twice as heavy as the passenger door. Trooper Brattin also observed a red substance near the rear wheel. The officers also observed glue on the inside panel of the driver's side door. After searching for approximately fifteen minutes, the troopers did not find anything illegal in the truck.

Trooper Brattin then asked Defendants if they would follow him to the sheriff's office in Colby and Defendants could sit in the office. The following is the dialogue between Trooper Brattin and Defendants:

> Trooper Brattin: All right, guys. Real quick. That way you don't have to stand out here anymore. You guys mind following us in to town? And then we'll put you in an office or room. That way you don't have to stand out here and freeze. Does that work?
>
> Vergara-Manzo: Yeah.

Trooper Brattin: What we'll do is he'll, you just follow me, and he'll follow you guys, okay? What we'll do is we'll do is we'll get you in an office, so you don't have to stand out here.

Vergara-Manzo: Why, what's wrong?

Trooper Brattin: Huh?

Vergara-Manzo: What's wrong?

Trooper Brattin: Oh, um, I'm waiting to hear back from dispatch—

Vergara-Manzo: About the registration?

Trooper Brattin: Yeah, and some other issues. So that's why… if you guys will follow us, we'll get it all sorted out. Okay?

Vergara-Manzo: Okay.

The drive to Colby took approximately five minutes, and it took approximately three additional minutes to get to the station. At the station, Balleza remained with the vehicle at all times. Vergara-Manzo was arrested on the warrant out of California.[1] The officers dismantled the truck's dashboard and found approximately 4.9 pounds of methamphetamine located on the passenger's side of the vehicle.

On November 6, 2013, a federal grand jury returned a one-count indictment, charging both Defendants with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841. Both Defendants now move to suppress the evidence.

## II. Analysis

Defendants challenge the search of the vehicle and the seizure of methamphetamine that occurred at the sheriff's office in Colby arguing that consent was not freely given. Defendant Vergara-Manzo asserts that his continued detention after Trooper Brattin's initial search on the

---

[1] California apparently decided that it would extradite Vergara-Manzo on his previous offense.

side of the road was unlawful because his consent to the extended search was involuntary because he was not given the option to refuse consent, and he was misled by the trooper's answer as to why the initial stop had not concluded. Vergara-Manzo further argues that even if the consent is considered voluntary, the scope and duration of the search was not. Defendant Balleza argues that (1) his consent was invalid because of the unreasonable length of time it took for Trooper Brattin to perform the search and (2) his consent to search was irrelevant once Trooper Brattin accompanied him and his vehicle to the Colby sheriff's office because he was not free to leave under the circumstances. Thus, both Defendants seek to suppress the methamphetamine found in the truck's dashboard while at the Colby sheriff's office.

The government contends that Defendants' consent was freely and voluntarily given and that the scope and duration of the search did not exceed the freely given consent. In the alternative, the government argues that the troopers had probable cause to conduct or expand the search of the vehicle. Accordingly, the government requests that the evidence not be suppressed.

### A. *Defendant Vergara-Manzo and Standing*

As an initial matter, the Court must determine whether Vergara-Manzo, as a passenger in the vehicle, has standing to seek the suppression of the evidence found in the vehicle at the Colby sheriff's office. "Fourth Amendment rights are personal, and therefore, a defendant cannot claim a violation of his Fourth Amendment rights based on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises."[2] An individual with no possessory or propriety interest in a vehicle lacks standing to directly

---

[2] *United States v. Deluca*, 269 F.3d 1128, 1131 (10th Cir. 2001).

challenge the lawfulness of a vehicle search.³ A defendant, however, still has standing to "contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention."⁴

> To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights. The defendant then bears the burden of demonstrating a factual nexus between the illegality and the challenged evidence. To satisfy the nexus requirement, a defendant must show the evidence he seeks to have suppressed would never have been found but for his, and only his, unlawful detention. Thus, when the detained defendant is a mere passenger in vehicle belonging to another person, this court has determined he must show that had he . . . requested permission or otherwise attempted to depart the scene, he would have been able to leave in the owner's car.⁵

Vergara-Manzo made no showing that he had a possessory interest in the vehicle. As will be explained below in section B(3), Trooper Brattin's detention of Vergara-Manzo was not unconstitutional because he had reasonable suspicion to detain both Defendants. Accordingly, Vergara-Manzo cannot establish the first element that his detention violated the Fourth Amendment and lacks standing to seek the suppression of the evidence.⁶

### B. Defendant Balleza

*1. Consent to Search*

"[T]he Fourth Amendment unquestionably prohibits the search of a vehicle's interior unless law enforcement officials receive consent, have a warrant, or otherwise establish probable

---

³ *Id.*

⁴ *Id.* (citation omitted). *See also Brendlin v. California*, 551 U.S. 249 (2007).

⁵ *United States v. Zavala*, 195 F. App'x 746, 750 (10th Cir. 2006) (internal quotation marks and citations omitted).

⁶ Even if Vergara-Manzo's detention could be considered illegal, he cannot establish a factual nexus between his detention and the evidence found in the truck. Vergara-Manzo made no showing that the evidence would not have been found but for *his* detention.

cause to support the search."[7]  "[A] vehicle may be searched if a person in control of the vehicle has given his voluntary consent to the search."[8] A two-part test is employed to determine whether consent is voluntary under the totality of the circumstances.[9]  First, "the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given."[10]  Next, "the government must prove that this consent was given without implied or express duress or coercion."[11]  Some factors to consider in the totality of the circumstances include "physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons."[12]  "The central question is whether a reasonable person would believe he was free to leave or disregard the officer's request."[13]

Defendant Balleza freely and voluntarily consented to the search of the truck on the side of the road.  Trooper Brattin had concluded his initial traffic stop and returned all documents to Balleza.  He then asked if he could ask a few more questions and Balleza freely answered those questions.  When Trooper Brattin asked if he could search the truck, he did not use an aggressive or threatening tone and did not display a weapon.  Both individuals exited the vehicle voluntarily.  Although there were two officers that performed the search of the truck, the second

---

[7] *United States v. Forbes*, 528 F.3d 1273, 1277-78 (10th Cir. 2008).

[8] *United States v. Davis*, 636 F.3d 1281, 1292 (10th Cir. 2011) (citation omitted).

[9] *Id.*

[10] *Id.*

[11] *Id.* at 1292-93.

[12] *United States v. Sawyer*, 441 F.3d 890, 895 (10th Cir. 2006).

[13] *United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006) (quotation marks and citation omitted).

officer did not arrive until approximately the time Officer Brattin began the search and only helped with the search of the vehicle. Accordingly, in considering the totality of the circumstances, Defendant Balleza's consent was voluntary.[14]

*2. Scope of Consent*

Defendant Balleza, however, contends that he did not consent to the extended search at the Colby sheriff's office and that the continued detention was unlawful.[15] "In determining the scope of a defendant's consent, [the question is] what a reasonable person would have understood by the exchange between the defendant and police officer."[16] A court must look at the totality of the circumstances to determine whether the search stays within the boundaries of a defendant's consent.[17]

Here, the later exchange between Trooper Brattin and Defendant Vergara-Manzo is a factor in the Court's analysis. This dialogue was between the trooper and the passenger in the truck. Trooper Brattin did not speak with Balleza or specifically inform him that he would like to continue searching the vehicle in Colby. Thus, the trooper did not seek consent from the driver who had the authority to consent. Instead, Trooper Brattin spoke to Vergara-Manzo and requested that they follow him into town so they did not have to stand outside and freeze, and they would put Defendants into an office or room. A further search of the vehicle may have

---

[14] To the extent that Defendant Balleza complains that the search on the side of the road was unreasonably long and exceeded his consent, the Court concludes otherwise. The search took approximately fifteen minutes, and as noted above, he affirmatively consented to the search of the truck. *See also United States v. Guerrero-Sanchez*, 412 F. App'x 133, 141-42 (10th Cir. 2011) (finding that "no bright-line rule exists to definitively determine when the duration of a traffic stop and search is unreasonably long for the purpose of implicating the Fourth Amendment," but an approximate two-hour search when the first forty-nine minutes were consensual was not unreasonably long).

[15] Vergara-Manzo also asserts this proposition, but he lacks standing to do so.

[16] *United States v. Lyons*, 510 F.3d 1225, 1239 (10th Cir. 2007).

[17] *Id.*

been implicit in Trooper Brattin's request for Defendants to follow him to town, but it was not explicit. Furthermore, Trooper Brattin also stated that Defendants would follow his vehicle, and the other trooper would follow Defendant's vehicle to town. Vergara-Manzo questioned what was wrong, and Trooper Brattin stated that he was waiting to hear back from dispatch and there were other issues.[18] Balleza did not verbally respond to this conversation.

The Trooper did not specifically request permission to conduct a more extensive search in Colby. Although the Trooper said: "You guys mind following us in to town?" he did not wait for a response to that question. Instead he continued: "And then we'll put you in an office or room. That way you don't have to stand out here and freeze. Does that work?" The question seeing a response was more directed to whether it would "work" for them to wait in an office or room rather than stand outside and "freeze." More tellingly, Balleza did not respond to this request by giving consent to the in town search, or in any way at all. Additionally, as the Trooper continued to explain the process, that they would be accompanied into Colby sandwiched between the two Troopers' vehicles, a reasonable person may not have felt that he had the ability to leave or to disregard Trooper Brattin's request to accompany the two troopers to the Colby sheriff's office for a further search of the vehicle. Accordingly, the Court concludes that Defendant's initial scope of consent to the search was limited to the roadside search, and did not extend to the search of the vehicle in town. The Court, therefore, must consider whether Defendant's detention and the further search of the vehicle were lawful by other means.

---

[18] The Court notes that Trooper Brattin's requests were *not* coercive. In considering whether an officer used coercion to obtain a defendant's consent, "[t]he proper inquiry centers on whether the defendant suffered, inter alia, physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery." *United States v. Silva-Arzeta*, 602 F.3d 1208, 1214 (10th Cir. 2010) (citation omitted). None of these elements were present.

*3. Reasonable Suspicion to Detain Defendants and Probable Cause to Perform Extended Search*

Defendant complains that the detention was unlawful because they were not free to leave when Trooper Brattin asked them to accompany him to the Colby sheriff's office.[19] "[A] consensual encounter may change to an investigative detention if the police conduct changes and vice versa."[20] "To initiate a seizure by means of an investigative detention, an officer must have an articulable and reasonable suspicion that the person seized is engaged in criminal activity."[21] The court considers the totality of the circumstances.[22] Furthermore, "[a] police officer may conduct a warrantless search of an automobile if there is probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under law."[23] Once an officer has probable cause to search the vehicle, all parts of the vehicle may be searched, and even dismantled, to look for the object of the search.[24]

In this case, multiple factors demonstrate that Trooper Brattin had reasonable suspicion to initially detain Defendants and probable cause to perform a further search of the truck.[25] Defendants stated that Vergara-Manzo was moving from California to Kansas, but there was

---

[19] Although both Defendants make variations of this argument, as the Court has previously noted, only Defendant Balleza has standing to challenge the search of the vehicle, or for that matter, to have consented to the search.

[20] *United States v. Madden*, 682 F.3d 920, 925 (10th Cir. 2012) (quotation marks and citation omitted).

[21] *Id.* at 925-26.

[22] *Id.*

[23] *United States v. Alcaraz-Arellana*, 441 F.3d 1252, 1261 (10th Cir. 2006) (quotation marks and citation omitted).

[24] *Id.*

[25] At the hearing, both parties appeared to suggest that reasonable suspicion was the standard at both stages. The government correctly argued in its brief, however, that it was a reasonable suspicion standard to detain and a probable cause standard to move the vehicle and perform a further search.

only one small bag in the vehicle. Defendants also stated that they went to California to buy the truck. Vergara-Manzo had a warrant for his arrest in California although initially there was no extradition requested. Defendant Balleza had a Texas driver's license but stated that he lived in Olathe, Kansas. Defendant Balleza had just purchased the vehicle two days prior to the stop for a small amount of money off the street in California. Trooper Brattin was familiar with the truck and knew that the listed purchase price was well below the truck's probable value. No individual was listed as the seller of the vehicle. "[I]mplausible or contradictory travel plans can contribute to a reasonable suspicion of illegal activity."[26]

In addition, both Defendants appeared nervous in different ways—Vergara-Manzo was extremely talkative, and Balleza would not make eye contact and did not speak to the trooper very much. There were issues with the tag because it was expired, but there was a 2014 decal sticker on the plate. The officers also observed modifications or discrepancies with the truck. The driver's side door was heavier than the passenger side door, the paint appeared unusual under the truck, there was a red substance near a rear axle of the truck, and there was glue on the inside of driver's door. Suspicious modifications to vehicles can contribute to probable cause to search that vehicle.[27]

Under the totality of the circumstances, the Court concludes that the officer had reasonable suspicion to detain Defendants, and probable cause supported the trooper's continued search at the Colby sheriff's office. Thus, the Court denies Defendants' motions to suppress.

---

[26] *United States v. McRae*, 81 F.3d 1528, 1535 (10th Cir. 1996).

[27] *Ledesma*, 447 F.3d at 1317.

**IT IS ACCORDINGLY ORDERED** this 4th day of March, 2014, that Defendant Felipe Balleza's Motion to Suppress (Doc. 17) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Alberto Vergara-Manzo's Motion to Suppress (Doc. 24) is **DENIED**.

**IT IS SO ORDERED**.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE